IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| DR. STEVEN MACARTHUR, et al., | ) | |
| | ) | Civil No.  2:00-CV-584J |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER RE: PLAINTIFFS'** |
| SAN JUAN COUNTY, et al., | ) | **RECUSAL MOTIONS** |
| | ) | |
| Defendants. | ) | |

\* \* \* \* \* \* \* \* \*

Following the Final Pretrial Conference in the above-captioned proceeding held on

November 14-15, 2002, the plaintiffs filed a series of motions requesting that this court

disqualify itself from further participation in this matter pursuant to 28 U.S.C. § 455(a)

(2000).  (*See* Plaintiffs' Motion to Disqualify the Judge from this Case, filed November

27, 2002 (dkt. no. 464) ("First Recusal Motion");[1] Plaintiffs' Motion to Disqualify the

Judge from this Case,  filed December 5, 2002 (dkt. no. 469) ("Second Recusal Motion");

Plaintiffs' Renewed Motion to Disqualify/Recuse and to Reset Hearing, filed January 24,

2003 (dkt. no. 487) ("Third Recusal Motion"); Plaintiffs' Motion for Reconsideration of

---

[1]When filed in July of 2000, this action was assigned to Judge Kimball.  On June 15, 2001, plaintiffs filed a "Motion for Recusal" (dkt. no. 195), which was briefed by the parties and granted without a hearing by written order.  (*See* Recusal Order, filed September 18, 2001 (dkt. no. 219).)  Though plaintiffs' motion was based largely on Judge Kimball's prior adverse rulings on legal issues, (*see* Reply to San Juan County's and the Health District's Response to Plaintiffs' Motion for Recusal," filed August 6, 2001 (dkt. no. 212), at 7-23), the court granted the motion "[b]ecause Plaintiffs have lost faith in this court's ability to treat them impartially, and in light of this court's numerous reprimands of Plaintiffs and their counsel."  (Recusal Order at 10.)  *Cf. Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir.1994) (adverse rulings alone are insufficient grounds for disqualification of a judge, "as is evidence that the judge criticized or was angry with a party"), *cert. denied*, 513 U.S. 818 (1994).

the Courts Denial of Disqualification, filed March 6, 2003 (dkt. no. 505) ("Fourth Recusal

Motion").)[2]

### Applicable Legal Standards

Section 455(a) of Title 28, United States Code provides that "[a]ny justice, judge,

or magistrate judge of the United States shall disqualify himself in any proceeding in

which his impartiality might reasonably be questioned."  28 U.S.C.A. § 455(a) (1993 &

Supp. 2005).[3]  Under § 455(a), judges should apply an objective standard in determining

---

[2]More recently, on June 17, 2005, plaintiffs' counsel filed "Plaintiffs Motion for Disqualification" (dkt. no. 745), which is calendared for hearing on October 25, 2005.

[3]28 U.S.C.A. § 455(b) reads:

(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
    (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
    (ii) Is acting as a lawyer in the proceeding;
    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

None of these bases for disqualification have presented themselves in this proceeding.

whether to recuse.[4]  A judge contemplating recusal should not ask whether he or she

believes he or she is capable of impartially presiding over the case.  According to our

court of appeals, under § 455(a), "[t]he test in this circuit is ""whether a reasonable

person, knowing all the relevant facts, would harbor doubts about the judge's

impartiality."" *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993) (quoting *United*

*States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992), *cert. denied*, 507 U.S. 1033

(1993) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987))).[5]  Under §

455(a), "a judge has a continuing duty to recuse before, during, or, in some circumstances,

after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an

objective observer reasonably to question the judge's impartiality."  *Id.* (citing *Liljeberg*,

---

[4]As the court of appeals has explained:

> This subsection is part of a 1974 amendment to the statute, enacted for the purpose of clarifying and broadening the grounds for judicial disqualification. "The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective ['in the opinion of the judge'] standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 2202, n. 7, 100 L.Ed.2d 855 (1988). See S.Rep. No. 93- 419 at 1 (1973); H.R.Rep. No. 93-1453 at 1-2 (1974), U.S. Code Cong. & Admin. News 1974, p. 6351.  The subsection "applies to the varied and unpredictable situations not subject to reasonable legislative definition in which judges must act to protect the very appearance of impartiality." *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir.1988). . . .

*United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993).  And Congress amended § 455 in 1974 "to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1974)."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7 (1988).

[5]According to plaintiffs' counsel, "In 1994, the U.S. Supreme Court stated that 'Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality.  If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified.'" (First Recusal Motion at 5 (quoting *Liteky v. United States*, 510 U.S. 540, 564, 114 S. Ct. 1147, 1162 (1994)).)  In fact, the quoted passage finds its source in Justice Kennedy's separate opinion in *Liteky*, concurring in the Court's judgment, as an articulation of what Justice Kennedy thought to be "[t]he standard that ought to be adopted for all allegations of an apparent fixed predisposition," not as an expression of the Court's majority view.  *See Liteky*, 510 U.S. at 557, 564 (Kennedy, Blackmun, Stevens & Souter, JJ., concurring in judgment).

486 U.S. at 861, *Frates v. Weinshienk*, 882 F.2d 1502, 1505-07 (10th Cir.1989), *cert. denied*, 494 U.S. 1004 (1990), and *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir.1989)).

> In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.  See, e.g., *Hall v. Small Business Admin.*, 695 F.2d 175, 179 (5th Cir. 1983); Susan B. Hoekema, Comment, *Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)*, 60 Temp. L.Q. 697, 727 (1987). . . .  The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question. . . .

*Id.* at 993 (citing *Gipson*, 835 F.2d at 1325; *Willner v. University of Kansas*, 848 F.2d 1023, 1026-27 (10th Cir. 1988); *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982); *In re Allied Signal, Inc.*, 891 F.2d 967, 970 (1st Cir.1989), *cert. denied*, 495 U.S. 957 (1990)).

The language of § 455(a) requiring recusal in any case "in which [the judge's] impartiality might reasonably be questioned" has led courts in every circuit to adopt some version of the "reasonable person" standard.  As the Eighth Circuit explained, "We apply an objective standard of reasonableness in determining whether recusal is required. 'Under § 455(a), "disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown."' *Tucker*, 78 F.3d at 1324 (citation omitted)."  *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003).

The Fourth Circuit has clarified that the hypothetical reasonable

-4-

observer is not a judge, because judges, keenly aware of the obligation to decide matters impartially, "may regard asserted conflicts to be more innocuous than an outsider would."  At the same time, the hypothetical observer "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased."  The Fifth and Seventh Circuits have noted that while a judge must ask "how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person,"  an outside observer is "less inclined to credit judges' impartiality and mental discipline than the judiciary . . . ."

Federal Judicial Center, *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144* 16 (2002) (footnotes omitted) (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998), *cert. denied*, 119 S. Ct. 1793 (1999); *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990); *United States v. Jordan*, 49 F.3d 152, 156, 157 (5th Cir. 1995).)

"If the issue of whether § 455 requires disqualification is a close one, the judge must be recused."  *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002); *see Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).  But the court of appeals has also said "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).  "A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation."  *Id.*  In *Nichols*, the Tenth Circuit listed seven frequently alleged bases for recusal that usually do not warrant it:  (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular

offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.  *Nichols v. Alley*, 71 F.3d at 351.[6]

A judge's rulings and expressions of opinion generally fail to justify recusal.

---

[6]*See also Cooley,* 1 F.3d at 993-994:

Thus, in addition to other factors, this and other courts have identified various matters arising in cases involving §§ 144, 455(a), or 455(b)(1), which will not ordinarily satisfy the requirements for disqualification under § 455(a): (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters, *United States v. Burger,* 964 F.2d at 1069; *Glass v. Pfeffer,* 849 F.2d at 1267; *Willner v. University of Kansas,* 848 F.2d at 1027; *Hinman v. Rogers,* 831 F.2d at 939-40; *United States v. Hines,* 696 F.2d at 719; (2) the mere fact that a judge has previously expressed an opinion on a point of law, *Leaman v. Ohio Dep't of Mental Retardation,* 825 F.2d 946, 949 n. 1 (6th Cir. 1987); *United States v. Bray,* 546 F.2d 851, 857 (10th Cir. 1976), or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense, *United States v. Gigax,* 605 F.2d at 514; *United States v. Haldeman,* 559 F.2d 31, 134 n. 302 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse, see *Glass v. Pfeffer,* 849 F.2d 1261, 1268 (1988); *Green v. Dorrell,* 969 F.2d 915, 919 (10th Cir.1992); *Willner v. University of Kansas,* 848 F.2d at 1028; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented, see *Frates v. Weinshienk,* 882 F.2d at 1506; (5) baseless personal attacks on or suits against the judge by a party, *United States v. Bray,* 546 F.2d at 858;  (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading;  and (7) threats or other attempts to intimidate the judge. See *United States v. Studley,* 783 F.2d 934, 940 (9th Cir. 1985); *United States v. Grismore,* 564 F.2d 929, 934 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Finally, we have emphasized that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."  *Hinman,* 831 F.2d at 939.
 (Footnotes omitted.)

> It has long been understood that, absent extreme cases, the circumstances
> suggesting or creating the appearance of partiality cannot derive from the
> trial itself—naturally, judges hold and express attitudes about the litigants
> and issues that they have formed during the trial. . . .

*Recusal: Analysis of Case Law* at 20 (footnote omitted).

It has long been understood that "The alleged bias and prejudice to be disqualifying

*must stem from an extrajudicial source* . . . other than what the judge learned from his

participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)

(emphasis added).  In *Liteky v. United State*s, 510 U.S. 540 (1994), the Court applied this

"extrajudicial source" doctrine under the current language of § 455(a), but clarified that

the doctrine has exceptions.  Just prior to his second criminal trial, the defendant in *Liteky*

moved to disqualify the judge on the ground that the judge displayed "impatience,

disregard for the defense and animosity" toward the defendant during an earlier criminal

trial.  He cited various comments by the judge, including admonitions of defense

witnesses and counsel as well as certain trial rulings.  The Court rejected the contention

that recusal was in order:

> First, judicial rulings alone almost never constitute a valid basis for a bias or
> partiality motion. . . . In and of themselves (*i.e.,* apart from surrounding
> comments or accompanying opinion), they cannot possibly show reliance
> upon an extrajudicial source; and can only in the rarest circumstances
> evidence the degree of favoritism or antagonism required . . . when no
> extrajudicial source is involved.  *Almost invariably, they are proper grounds
> for appeal, not for recusal*.  Second, opinions formed by the judge on the
> basis of facts introduced or events occurring in the course of the current
> proceedings, or of prior proceedings, do not constitute a basis for a bias or
> partiality motion unless they display a deep-seated favoritism or antagonism
> that would make fair judgment impossible.

510 U.S. at 555 (emphasis added & citation omitted).  "Consistent with *Liteky*, courts of appeals rarely reverse refusals to recuse when the alleged partiality did not derive from an extra-judicial source," *Recusal: Analysis of Case Law* at 21, such as judicial comments concerning a probable outcome based upon information presented within the context of a case:

> For example, the Tenth Circuit upheld a refusal to recuse even though the trial judge opined pretrial that "the obvious thing that's going to happen . . . is that she's going to get convicted. . . ."  The court of appeals believed the judge merely expressed a view of what was likely to happen derived from what he had observed in the case: "Nothing in the remark indicates that the judge was unable or unwilling to carry out his responsibilities impartially."

*Id.*  (quoting *United States v. Young*, 45 F.3d 1405, 1414, 1416 (10th Cir. 1995)).[7]

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir.1992) (citation omitted).  Under § 455, the movant's "factual allegations need not be taken as true, and the test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir. 1988) (quotation omitted).  Under § 455, the court of appeals insists that

> disqualification is appropriate only where the reasonable person, *were he to know all the circumstances*, would harbor doubts about the judge's

---

[7]The most common basis for recusal is when a judge learns something outside of the proceedings before the court which "'result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"  *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir.1994), *cert. denied*, 513 U.S. 818 (1994) (quoting  *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Liteky*, 510 U.S. at 551 (noting that extrajudicial source factor is the only common basis upon which to establish disqualifying bias).

impartiality. *Nichols*, 71 F.3d at 351.  There must be a reasonable factual basis to question the judge's impartiality. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993).  The scope of inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. *Id.*  Section 455 does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record.  See *Nichols*, 71 F.3d at 351; *Bryce v. Episcopal Church*, 289 F.3d 648, 659-60 (10th Cir. 2002).

*In re McCarthey*, 368 F.3d 1266, 1269-1270 (10th Cir. 2004) (emphasis added).

### Plaintiffs' First and Second Recusal Motions

Plaintiffs' counsel first moved to disqualify this court from further consideration of this matter based upon an alleged "appearance of a lack of impartiality" arising from the court's dismissal of plaintiffs MacArthur, Valdez and Lyman's claims at the conclusion of the two-day Final Pretrial Conference held on November 14-15, 2002, pursuant to Fed. R. Civ. P. 16(c)(1).  (*See* Minute Entry, dated November 15, 2002 (dkt. no. 459); Transcript of Hearing, dated November 15, 2002 ("Tr. 11/15/02"), at 113:9-118:15; Transcript of Hearing, dated November 14, 2002, *passim*.)  Plaintiffs point to the absence of pending motions for summary judgment under Rule 56 and argue that "while the Court may have no internal predisposition for either side of this dispute, the Court's eagerness in clearing its desk of a complex case . . . has the appearance of a lack of impartiality." (First Recusal Motion at 2.)  According to the motion, "Plaintiffs were not on notice that this hearing was to defend themselves against a Court's sua sponte summary dismissal," and the court did not afford those plaintiffs adequate notice and opportunity to present their claims.  (*Id.* at 4, 5, 7.)  Plaintiffs' First Recusal Motion also recounted that (1) several of plaintiffs' motions to compel discovery had previously been denied and motions to quash plaintiffs'

subpoenas had been granted; (2) the court also denied plaintiffs' motion for leave to amend the complaint at the conclusion of the Final Pretrial Conference; (3) the court asked defense counsel "to draft the dismissal order, for essentially the Court's sua sponte action";[8] and (4) the court had "indicated its predisposition to dismiss the portion of the case" remanded by the court of appeals, "suggesting that plaintiffs would not need a Rule 54(b) order to take the dismissed claims to the appeals court if they just waited for the ruling on the matters on remand," indicating that "the entire case could then go up on appeal, and the time would not take long to do so."  (*Id.* at 2, 3, 4.)  "While each of these actions standing alone may not constitute the appearance of prejudice," plaintiffs continue, "cumulatively they probably would appear to indicate bias to an objective outside observer."  (*Id.* at 4.)

Plaintiffs' Second Recusal Motion mirrored the first, asserting the same grounds in essentially the same words.

As explained elsewhere in some detail, the court dismissed MacArthur, Valdez and Lyman's remaining claims pursuant to Fed. R. Civ. P. 16(c)(1),[9] applying the legal standard for "frivolous" claims under that Rule, *viz.*, whether the claims are based upon an indisputably meritless legal theory, or are footed upon clearly baseless or conclusory

---

[8]According to plaintiffs' counsel, "Such delegation is common when the motion is drafted by the prevailing party.  Here, Plaintiffs recall no motions or Judge's comments citing to case law, or to specific rules leaving the drafting of such up to the defendants."  (First Recusal Motion at 3 ¶ 4 (footnote omitted).)

[9]At a pretrial conference, "consideration may be given, and the court may take appropriate action, with respect to (1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses; . . . ."  Fed. R. Civ. P. 16(c)(1).

factual assertions rather than specific facts which, if taken as true, warrant a trial on the merits.  (*See* Memorandum Decision & Order, filed June 13, 2005 (dkt. no. 742), at 4-5, 38, 165-168.)  Determining whether those claims raised triable issues, or whether they lacked an arguable basis either in fact or law, was part of the process of formulation of the issues for trial under Fed. R. Civ. P. 16(c)(1):

> Rule 16(c) has confirmed the court's power to identify the litigable issues, and to eliminate frivolous claims or defenses without awaiting the making of a summary judgment or other motion by the parties.  But at the same time, counsel bear a substantial responsibility in formulating the triable issues in that they must identify these issues for the court or they waive the right to have them tried.

3 James W. Moore, et al., *Moore's Federal Practice* ¶ 16.11, at 16-49 (2d ed. rev. 1994) (footnotes omitted).  Pretrial identification of triable issues under Rule 16(c)(1) proceeds under its own power, without reference to summary judgment under Rule 56 or any "pleadings-only"analysis of legal sufficiency under Rule 12(b)(6).[10]

Plaintiffs acknowledge that "[t]he Court allowed the Plaintiffs hours to place facts and law before the court for a pretrial hearing," and assert that "Plaintiffs understood all they had to do was show the Court there were enough questionable material facts before the Court to take them to a fact finder.  They need not even so much as prevail upon them."  (First Recusal Motion at 4.)  And under Rule 16(c)(1), to proceed to trial, all that plaintiffs needed to do was to identify triable issues that had an arguable basis in fact and

---

[10]Plaintiffs made repeated reference to Rule 12(b)(6) standards in disputing the dismissal of their claims in the context of pretrial under Rule 16(c) & (d).  (*See* First Recusal Motion at 4-5 (citing *Morse v. Regents of Univ. of Colorado*, 154 F.3d 1124, 1126 (10th Cir. 1998)); *id.* at 3 n.3 (discussing Rule 12(b)(6) dismissal with leave to amend, citing *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).)

law, *i.e.*, that were not frivolous.

Plaintiffs MacArthur, Valdez and Lyman had incorporated nearly all of the allegations pleaded in their proposed Amended Complaint as "issues" in a lengthy Proposed Pretrial Order submitted two days prior to the conference, and that document served as the framework for the colloquy between court and counsel during the two days of the Final Pretrial Conference.  The court understood the Proposed Pretrial Order to reflect plaintiffs' counsel's best effort to identify triable issues concerning MacArthur, Valdez and Lyman's claims, and the court's rulings made under Rule 16(c)(1) were largely footed on that effort, considered in light of the colloquy at the conference.

Following those rulings, counsel made an oral request for an immediate Rule 54(b) certification of the dismissal of MacArthur, Valdez and Lyman's claims:

> MS. ROSE: May I ask a question Judge, since this would probably be the final order for these plaintiffs –
>
> THE COURT: That's correct.
>
> MS. ROSE: –would it be possible to get a Rule 54(b) order signed?
>
> THE COURT:  Well *I think the easy way here is for us to finish up the work that we need to finish up on the other matter and then let it all go if it's going to go.  That won't take long.*  Let's see what we can do.

(Tr. 11/15/02 at 118:19-119:2 (emphasis added).)  This simple comment about timing gives *no* indication of how the court may rule on the substantive issues on remand, and certainly suggests no "predisposition to dismiss the portion of the case coming down from the 10th Circuit on remand," as plaintiffs' First Recusal Motion insists.  (First Recusal

Motion at 2 ¶ 2.)  At that point, the court of appeals' mandate had not yet been received by this court, and the issues on remand had not yet been briefed.  Moments before the discussion quoted above, the court had asked counsel to submit "something in writing . . . as to what you think the Circuit's told us to do, what needs to be done. . . . I'm interested in having you tell me your interpretation of what it is that the Circuit says has to be done." (Tr. 2/24/03, at 110:13-113:1 (the Court).)  The court indicated no predisposition at all:

> I frankly haven't studied their opinion and the brief scanning that I did it appeared that the question was a very limited question and I'm interested simply in your versions as to what needs to be done and so we can agree on what needs to be done if anything.

(*Id.* at 113:3-8 (the Court).)

Following receipt of the Tenth Circuit's mandate on November 20, 2002 (dkt. no. 460), this court set a schedule for consideration of the issues on remand.  At the January 7, 2003 status and scheduling conference, the court set plaintiffs' First and Second Recusal Motions for hearing on February 24, 2003, along with all other pending motions, as well as the jurisdictional issues on remand.  (*See* Minute Entry, dated January 7, 2003 (dkt. no. 480); Transcript of Hearing, dated January 7, 2003, at 2:2-6, 3:17-4:22, 5:10-8:16.)  At that time, the court observed:

> The question of jurisdiction is endemic to the Court of Appeals' opinion it seems to me.
>
> It seems to me that it's a question of jurisdiction over what and I think we need to think about that and be in a position to talk about that and while the Navaho court in its opinion made reference for example to Montana there was no specific application of the doctrines of Montana to this particular rather unusual fact situation.

-13-

> . . . I've tried to familiarize myself with the subject matter of what the
> Court of Appeals talked about and we really have to resolve the
> jurisdictional question it seems to me and we have to really define what's
> left and I'm interested in people coming and telling me what's left.

(Transcript of Hearing, dated January 7, 2003, at 4:7-22 (the Court).)  The point was

clarified for counsel:

> MS. ROSE: Your Honor, just for clarification so that there's no
> confusion on my part, when you're talking about jurisdiction are you talking
> about the jurisdiction of the Navaho court over the claims that the Navaho
> court orders addressed?
>
> THE COURT: Yeah.  Your effort here was to have this court as I
> understand it enforce the decree of the Navaho court.
>
> MS. ROSE: That's true.
>
> THE COURT: Okay.  So that we're talking about the jurisdiction of
> this court and we're talking about the jurisdiction as well of the Navaho
> court but you're asking that this court enforce that order.
>
> MS. ROSE: And may I say Your Honor it would be extremely
> helpful to the plaintiff if the defendants would brief this matter in time for us
> to study their briefs and their positions and respond.
>
> THE COURT: Well we're interested in both of you briefing but I
> don't have any trouble if it's convenient for counsel for plaintiffs, you
> know, it's your burden at this point. . . .

(*Id.* at 5:17-6:12.)

**Plaintiffs' Third Recusal Motion**

Plaintiffs' Third Recusal Motion, filed January 24, 2003, asked that the briefing of

the issues on remand be suspended and that the February 24, 2003 hearing concerning

those issues be reset, except as to plaintiffs' disqualification/recusal motions, and that

these motions be granted prior to signing any dismissal order affecting plaintiffs

MacArthur, Lyman and Valdez.  According to the motion, "Plaintiffs believe the court

may be looking for any reason to rule against them."[11]  Referring to the claims of plaintiffs

Singer, Riggs and Dickson seeking to enforce orders issued by the Navajo Nation District

Court, counsel asserted that "[i]n the last scheduling conference the Judge opined that the

Navajo Court's decision may be flawed, further indicating that the Judge would carry out

the dismissal stated earlier in the pretrial hearing."  (*Id.*)  From this, plaintiffs inferred that

"any and every reason, no matter how small, will be used to protect the Defendants from

the Navajo Court decision and once again throw the case into the Appeal Court."  (*Id.*)

On January 29, 2003, the case was again before this court for hearing on plaintiffs'

motion to extend the time for filing reply memoranda concerning the recusal motions,

(*see* Plaintiffs' Motion for an Extension of Time for Filing a Reply, filed January 21, 2003

(dkt. no. 483)), at which time counsel also raised plaintiffs' Third Recusal Motion,

arguing that she needed additional time to complete her petition for a writ of certiorari to

be filed with the United States Supreme Court.  (*See* Transcript of Hearing, dated January

29, 2003, at 2:20-3:9 (Ms. Rose).)  The court extended the briefing period to

accommodate plaintiffs' counsel, but kept the February 24th hearing date.  In the course of

that discussion, counsel raised a question:

> MS. ROSE: May I ask another question Your Honor?  We are
> concerned about from our perspective *the court's statement that it would*

---

[11]("Memorandum of Law [re:] Plaintiffs' Formal Objection and Motion to Suspend Deadlines and Renewed Motion for Disqualification and Recusal and Reply to the County and District's Response to the Initial Motion, filed January 24, 2003 (dkt. no. 488) ("Third Recusal Mem."), at 3.)

*probably dismiss the case on procedural grounds and possibly dismiss it so
that it could go up on appeal.*

THE COURT: I'm not acquainted with such a statement.

MS. ROSE: Pardon me?

THE COURT: I say I'm not acquainted with such a statement.  I've
made no ruling in reference to that particular matter.  That's the whole point
is the jurisdictional question that needs to be resolved and –

MS. ROSE: Your Honor – I'm sorry, I didn't mean to interrupt. The
question that we're going to be asking on our petition it's going to challenge
the Montana doctrine itself and –

THE COURT:  That's fine, you know, have at it.

MS. ROSE: But would you consider hearing the recusal motion
before proceeding with any other actions on the case?

THE COURT: I'm happy to do that.  We'll put that first on the
calendar for the 24th.  Anything else?

MS. ROSE: May I ask one question?  Has the court any
predisposition towards whether or not it would or would not disqualify itself
on this case?

THE COURT: Well I'll deal with that at an appropriate time.  As
you've requested we'll deal with that first on the 24th.

(*Id.* at 6:12-7:14.)

As the actual transcripts of the November 2002 and January 2003 hearings reflect,

this court had made *no* statement "that it would probably dismiss the case on procedural

grounds and possibly dismiss it so that it could go up on appeal," or any statement that

could fairly be construed to mean that, or that reflected any predisposition as to the merits

of the jurisdictional issues on remand.  Other than the court's prior adverse rulings on

-16-

motions and at pretrial, the only ground for disqualification asserted by plaintiffs' first three motions was that the court assigned the drafting of a proposed order to prevailing counsel at the Final Pretrial Conference.

At the February 24, 2003 hearing, the court addressed the First, Second and Third Recusal Motions, calling counsel's attention to Rule 16(c)(1), concerning the formulation of triable issues at the pretrial conference, and to Local Rule DUCivR 54-1(a),[12] concerning preparation of proposed orders by counsel:

> So the Court in making the assignment that prevailing party and counsel for the prevailing party provide orders was simply following the Federal Rules of Civil Procedure as amplified by the local rule and embraced in the local rules cited.  I don't suppose that following the local rules is an indication of impropriety or an indication of the appearance of impropriety on the part of the judge.

> I have looked at the written material in reference to the motion to disqualify and I want to emphasize that I received this case as the result of random assignment, by chance basically, after a prior judge recused himself. I might indicate that the Court has over the years made every effort to deal with the question of when it is appropriate to recuse recognizing that the Court in its effort to be fair to all parties also has a duty to decide, and sometimes decisions are not looked upon with favor by those who don't prevail.

> But the fact that the judge has ruled on a question and asked counsel to prepare a suggested form of order in the opinion of the Court does not rise to the level of indicating that in some fashion the Court is incapable of dealing with the matter that he has a duty to decide.  I have searched the

---

[12]DUCivR 54-1(a) reads:

**(a) Orders in Open Court.** Unless otherwise determined by the court, orders announced in open court in civil cases must be prepared in writing by the prevailing party, served within five (5) days of the court's action on opposing counsel, and submitted to the court for signature pursuant to the provisions of section (b) of this rule.

materials with some degree of care to see if there is a statutory basis that
would in any way justify a recusal, and I might indicate that in my
examination of the record I find none.

(Transcript of Hearing, dated February 24, 2003, at 29:1-25 (the Court).)  The court ruled

that "[t]he three motions to recuse will be denied.  There is nothing inappropriate about

the court asking counsel to do what both the civil rules and the local rules provide as a

routine matter."  (*Id.* at 30:15-18 (the Court).)

**Plaintiffs' Fourth Recusal Motion**

Filed on March 6, 2003, plaintiffs' Fourth Recusal Motion sought reconsideration

of the court's February 24th denial of the previous three recusal motions on the grounds

that (1) "this Court failed to address its statements of predisposition to dismiss the Navajo

court orders"—statements that in fact were never made; (2) this court had not "ordered

briefing in keeping with" *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845,

855-856 (1985), as plaintiffs had requested; (3) this court requested defendants to furnish

a complete copy of the San Juan Health Services District's contract with the Indian Health

Service, instead of relying on excerpts of that contract furnished by the plaintiffs; (4) this

court did not address plaintiffs MacArthur, Valdez and Lyman's "Rule 56(c) challenge,"

that is, their argument that they were entitled to proceed under Rule 56(c) with reference

to any claims dismissed at the pretrial conference under Rule 16(c)(1), including the

required ten days' prior notice and an opportunity to submit written affidavits;[13] (5) this

---

[13]"Under Rule 56, prior to summary judgment, there is to be a brief *in writing*, served no less than 10
days, to afford the Plaintiffs an opportunity to study and examine the case law and facts that serve as the basis
for summary judgment. . . . 'It is settled law that noncompliance with the time provisions of Rule 56(c) deprives

(continued...)

court had denied plaintiffs certain discovery materials; and (6) "[t]he Court exhibited health problems on February 24, 2003, and given the heavy case load for the court, the Plaintiffs believe recusal is appropriate." (Memorandum in Support of Plaintiffs Motion for Reconsideration of the Courts Denial of Disqualification, filed March 6, 2003 (dkt. no. 506) ("Fourth Recusal Mem."), at 2-4 ¶¶ 1-8.)[14]

The court denied the plaintiffs' Fourth Recusal Motion at the December 19, 2003 hearing. (*See* Order, filed January 29, 2004 (dkt. no. 603); Transcript of Hearing, dated December 19, 2003, at 66:4-11.)

### Analysis of Plaintiffs' Asserted Grounds for Recusal Under § 455

As detailed above, having no predisposition concerning the Navajo court orders at issue in this case, this court made no "statements of predisposition to dismiss the Navajo court orders," regardless of how plaintiffs' counsel may wish to characterize what was said.[15] Particularly when read in context, the transcripts speak for themselves. Given that disqualification must be based upon "outward manifestations and reasonable inferences

---

[13](...continued)
the court of authority to grant the motion for summary judgment unless the opposing party has waived this requirement.'" (Fourth Recusal Mem. at 3 (quoting *Osbakken v. Venable*, 931 F.2d 36, 37 (9th Cir. 1991)) (emphasis in original).)

[14]According to counsel, "on February 24, 2003, this Court exhibited a highly inflamed right eye, and when exiting the bench displayed weakness when walking even to leaning into the wall in the hallway to chambers" and "[o]n previous occasions, the Court has placed a hand behind an ear, cupping it" so as "to hear more clearly." (Fourth Recusal Mem. at 7.) Apparently overlooking the fact that I also wear trifocals, plaintiffs' counsel asserted that "the Court should disqualify itself to allow a Judge in better health to examine this case in its totality, prior to any decisions of dismissal being officially signed, or made." (*Id.*)

[15]Even an acknowledged predisposition is not "remotely sufficient evidence of the required 'deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *In re Huntington Commons Assocs.*, 21 F.3d 157, 159 (7th Cir. 1994) (quoting *Liteky*).

drawn therefrom," *In re McCarthey*, 368 F.3d at 1269,  the question whether "a reasonable

factual basis exists for calling the judge's impartiality into question," based upon this

court's statements in open court and on the record, would be answered in the negative by

"a reasonable person, knowing all the relevant facts."  *Cooley*, 1 F.3d at 992, 993.

*National Farmers* does not prescribe any particular content or style for briefs

dealing with questions of tribal civil jurisdiction; this court set a briefing schedule for the

issues on remand, leaving it to counsel to prepare and submit pertinent briefs using their

own professional judgment as to content in light of the court of appeals' opinion

remanding the matter to this court.  This court denied plaintiffs' motions that sought to

compel a different approach.  Previous adverse rulings are almost never a basis for recusal,

*Liteky v. United States*, 510 U.S. at 555, and *this* asserted ground for disqualification

serves as a textbook example of why that is generally the case.

Moreover, the fact that the court requested a *complete* copy of the Health District's

IHS contract in lieu of the "pertinent parts" of the same document proffered by plaintiffs'

counsel did not go "beyond any parameters for determining the subject matter jurisdiction

of Tribal Courts," as the Fourth Recusal Motion insists.  (*See* Transcript of Hearing, dated

February 24, 2003, at 35:11-38:22, 39:23-40:18, 59:3-60:1.)[16]  The fact of the existence of

---

[16]In February of 2003, the plaintiffs served their "Motion to Allow Plaintiffs 'Pertinent Parts of the Navajo Court Record' as Originally Served on Navajo Court Defendants and in Possession of the Court and Defendants be Accepted as Evidence for the Enforcing [of] Navajo Court Orders," filed November 17, 2003 (dkt. no. 568), including 65 documents submitted as attachments to the plaintiffs' Navajo court complaint.  This court granted that motion in part, *viz.*, "to the extent that the submitted documents shall be received as evidentiary exhibits."  (Order re: Pending Motions, filed March 30, 2005 (dkt. no. 718), at 2.)  The plaintiffs' "Pertinent Parts" compendium thus comprises a part of the record in this action, received as a compilation of evidentiary exhibits rather than as a part of the plaintiffs' Amended Complaint.  (*See also* Exhibits, filed

(continued...)

the Health District's IHS contract remained uncontroverted in this proceeding, and the

rules of evidence favor the use of complete original or authentic duplicate documents as

evidence of a document's contents.  *See* Fed. R. Evid. 106, 1001-1004.  There was no

effort here to "retry the case" presented to the Navajo court—a case that was still awaiting

a trial in that forum—or to sidestep the applicable standard of review of the Navajo court's

preliminary findings of jurisdictional fact.  Again, counsel is complaining of an adverse

ruling made in open court and on the record.

At the February 24th hearing, the court did not address "plaintiffs' Rule 56(c)

challenge that Plaintiffs were being denied due process" because other than noting in the

First and Second Recusal Motions that "[n]o motions for summary judgment were before

the Court" at the Final Pretrial Conference, (First Recusal Motion at 4; Memorandum in

Support of Plaintiffs' Motion to Disqualify the Judge From This Case, filed December 5,

2002 (dkt. no. 470) ("Second Recusal Mem."), at 3), the first three recusal motions raised

no such "Rule 56(c)" objection as to timing.[17]  Moreover, as plaintiffs correctly noted, no

summary judgment motions were pending at the time of the November 14-15, 2002 Final

Pretrial Conference, and no summary judgment was granted in favor of any party at the

conclusion of that conference.  As pointed out at the February 24, 2003 hearing, plaintiffs'

---

[16](...continued)
September 6, 2000 (dkt. no. 22).)

[17]At best, the question was first raised in a reply memorandum.  (*See* Plaintiffs' Reply to the
Defendants' Response to the Plaintiffs' Motion for the Judge's Disqualification, filed December 27, 2002 (dkt.
no. 478), at 2 ("The defendants fail to cite any summary judgment motion before the court, yet their proposed
order is one of summary judgment. . . . If there had been the memorandum of law filed with the court as required
by Rule 56 of the Federal Rules of Civil Procedure, the law could have been briefed appropriately.").)

claims were examined—and dismissed as frivolous—in the context of pretrial under *Rule 16(c)(1)*, not under Rule 56 or Rule 12(b)(6).

The question under § 455(a) is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality," given this court's dismissal of plaintiff MacArthur, Valdez and Lyman's claims as frivolous under Rule 16(c)(1); plaintiffs' objections based upon Rule 56 summary judgment procedures have no bearing where Rule 56 standards were not applied and a Rule 56 summary judgment was not granted. Counsel's reluctance to acknowledge the existence of Rule 16(c)(1), and the function of the pretrial conference in identifying and narrowing triable issues, does not translate into "a reasonable factual basis . . . for calling the judge's impartiality into question," *Cooley*, 1 F.3d at 993, absent an additional showing of partiality stemming from some "extra-judicial source,"consistent with *Liteky*.

Nor does it reflect a lack of impartiality for the court to decline to allow counsel to engage in an extended fishing expedition through discovery of local governmental records having at best only a tangential relationship to the claims and issues properly before this court. Remembering that the party seeking recusal must provide a reasonable factual basis to doubt the judge's impartiality, *Nichols v. Alley*, 71 F.3d at 351, conclusory allegations based upon this court's prior adverse discovery rulings clearly cannot suffice. Finally, counsel's expressed concern for the court's health, sincere as it may have been, did not raise any matter of genuine concern warranting the court's disqualification from further consideration of the case. "A reasonable person, knowing all the relevant facts,"

would not "harbor doubts about the judge's impartiality" based upon the judge leaning forward and cupping a hand to an ear "to hear more clearly" what counsel has to say, (Fourth Recusal Mem. at 7), or steadying himself while stepping across the bench's new wheelchair access ramp, a facility installed for the benefit of a colleague.

The court's "attentiveness to complex details, attitude and emotions, and reasoning abilities," (Fourth Recusal Mem. at 7), still seem at least equal to the tasks at hand—including "the complexities of state, federal and Indian law that require a 'detailed study'"—even viewing those matters through trifocals. *See generally* Memorandum Opinion and Order, filed October 12, 2005 (dkt. no. 837); Memorandum Decision and Order, filed June 13, 2005 (dkt. no. 742).

Though plaintiffs' memoranda quote the language of the current objective "reasonable person" test for disqualification under 28 U.S.C. § 455(a), their grounds and their arguments are framed largely in terms of their own subjective inferences, perceptions, apprehensions, and fears, and not those of "a well-informed, thoughtful and objective observer," knowing all of the relevant facts and circumstances, and disinterested in the merits. Objectivity is often found to be in short supply in this case. (*See, e.g.*, Plaintiffs' Reply to the Defendants' Response to the Plaintiffs' Motion for the Judge's Disqualification, filed December 27, 2002 (dkt. no. 478), at 2 ("First, the Plaintiffs liken the people they are suing to a gestapo of sorts, . . . .").) Characterization, hyperbole and innuendo have so often displaced simple description, narrative sequence and reasoned explanation.

Parsing plaintiffs' various allegations as best it can, the court simply finds no sufficient factual basis for recusal under § 455(a) on the grounds asserted by the plaintiffs.

**General Overview of Plaintiffs' Recusal Motions**

Plaintiffs' motions to disqualify this court took the hard road of relying almost entirely on the court's prior adverse rulings—and anticipated future adverse rulings—as their asserted bases for recusal under § 455(a). "A judge's rulings and expressions of opinion generally fail to justify recusal." *Recusal: Analysis of Case Law* at 20 (footnote omitted) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) ("adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt")).

The underlying purpose of the plaintiffs' recusal motions may be discerned in the particular relief that plaintiffs sought: disqualification of the *entire bench* of the District of Utah in favor of designation of a federal district judge from outside of Utah—perhaps a judge that plaintiffs hoped may take a more favorable view of the plaintiffs' theories of jurisdiction and liability.  Beginning with the First Recusal Motion, plaintiffs "request[ed] that any new judge selected for this case be from outside the State of Utah." (First Recusal Motion at 7.)  The Second Recusal Motion echoed that request.  (*See* Second Recusal Mem. at 7.)   The Third Recusal Motion anticipated that "a new judge in this district can review all aspects of this case," (Third Recusal Mem. at 6), but the plaintiffs' extraordinary writ petition, filed eleven days earlier with the court of appeals, stated that "[t]he Petitioners seek the appointment of a new judge, preferably from out of state," and

"ask[ed] the Chief Judge to appoint an out of state Judge to hear this case,"given "the long

litigation in Utah courts against these defendants historically by any plaintiff seeking equal

rights . . . ." (Petition for a Writ of Mandamus and Prohibition, *In re: Riggs, et al. v. San

Juan County, et al.*, Case No. 03-4036 (10th Cir., filed February 13, 2003), at 9, 29; *see

id.* at 15 n.13.)

 Section 455 of the Judicial Code promises adjudication before an impartial tribunal,

but it does not guarantee any plaintiff a hearing by an even more sympathetic ear than

counsel believes to be available within the District in which the action is filed.

As the court of appeals explained in *Cooley*:

> We have stressed that "section 455(a) must not be so broadly construed that
> it becomes, in effect, presumptive, so that recusal is mandated upon the
> merest unsubstantiated suggestion of personal bias or prejudice." *Franks v.
> Nimmo*, 796 F.2d 1230, 1234 (10th Cir. 1986) (quoting *United States v.
> Hines*, 696 F.2d at 729). The statute is not intended to give litigants a veto
> power over sitting judges, or a vehicle for obtaining a judge of their choice.
> See, e.g., *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981); *United
> States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986).
>
>  Congress expressed concern over abusive invocation of the statute by
> parties as a means of judge shopping, stating:
>
>> Nothing in this proposed legislation should be read to warrant
>> the transformation of a litigant's fear that a judge may decide a
>> question against him into a "reasonable fear" that the judge
>> will not be impartial. Litigants ought not have to face a judge
>> where there is a reasonable question of impartiality, but they
>> are not entitled to judges of their own choice.
>
> H. Rep. No. 1453, 93d Cong., 2d Sess. 1 (1974), reprinted in 1974
> U.S.Code Cong. & Admin. News 6351, 6355.

1 F.3d at 993.

Plaintiffs' § 455(a) motions in this case reflect precisely what Congress wished to avoid.

**Conclusion**

Applying the relevant legal test, *viz.*, "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality," *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987), the court has reviewed, considered and denied each of the plaintiffs' disqualification motions for lack of the requisite factual grounds that would cause an objective observer reasonably to question the court's impartiality.  "[W]e ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d at 156 (citing *In re Mason*, 916 F.2d at 386).  The court's pretrial, motion and discovery rulings in this case were not the product of partiality, bias or prejudice, and an objective, reasonable observer knowing all the relevant facts would not perceive them as such. Keeping in mind that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require," *Nichols*, 71 F.3d at 351; *Bryce*, 289 F.3d at 659, this court cannot grant plaintiffs' wish in this instance.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Disqualify the Judge from this Case, filed November 27, 2002 (dkt. no. 464), is DENIED;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Disqualify the Judge from this Case, filed December 5, 2002 (dkt. no. 469), is DENIED;

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion to Disqualify/Recuse and to Reset Hearing, filed January 24, 2003 (dkt. no. 487), is DENIED.[18]

DATED this *21* day of October, 2005.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[18]Plaintiffs' Motion for Reconsideration of the Courts Denial of Disqualification, filed March 6, 2003 (dkt. no. 505), was denied as reflected in the Order, filed January 29, 2004 (dkt. no. 603).